IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

U.S. EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
)
Applicant, )

v.

07CV6266
JUDGE ZAGEL
MAG. JUDGE NOLAN

DEVELOPMENT DIMENSIONS
INTERNATIONAL, INC.,

Respondent. )
)
)

## DECLARATION OF JOHN P. ROWE

I, John P. Rowe, declare under the penalty of perjury:

1.     I make this Declaration in support of the Application of the U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") for an Order to Show Cause why a subpoena, served by the Commission on Development Dimensions International ("DDI"), should not be enforced.

2.     I am the Director of the Commission's Chicago District Office and, as such, I am the custodian of the Commission's administrative files in this office, including the file relating to the Charge of Discrimination that Anthony Musso filed against Daimler-Chrysler Corporation, Number 210-2005-9574. This subpoena enforcement action grew out of that Charge of Discrimination

3.     I make this Declaration on the basis of my own personal knowledge and my review of the Commission's administrative file concerning Charge Number 210-2005-9574.

4.     The Chicago District Office is responsible for investigating charges alleging that employers have engaged in employment practices which violate the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq.

5.     On October 4, 2005, Anthony Musso filed a Charge of Discrimination Number 210-2005-9574, with the Chicago District Office of the Commission alleging that in May, 2005

1

he contacted Daimler-Chrysler about job openings and was told that he could apply for a salaried position. He took an on-line computerized test for the position and was later told that he had not done so well. He was not hired for a job. He alleged that Daimler-Chrysler discriminated against him by failing to hire him because of his disability. (A copy of his Charge is attached as Exhibit 1.)

6. The Chicago District office served a Notice of the above Charge of Discrimination upon Daimler-Chrysler on or about October 17, 2005. (Exhibit 2).

7. On June 8, 2007, EEOC issued to DDI Subpoena Number CH-07-375. (Exhibit 3.) The subpoena was issued by John P. Rowe, Chicago District Director of the EEOC, and was received by DDI via certified mail on Monday, June 11, 2007. The subpoena requested that DDI produce, at the Chicago EEOC office, the test questions, Charging Party's answers and scores, and information about the tests of persons who were successful test-takers.[1]

8. DDI served the Commission a Petition to Revoke or Modify Subpoena Number CH-07-375 on June 22, 2007. In response to DDI's Petition, EEOC issued on August 10, 2007 a Determination (Exhibit 4) that narrowed the scope of the Subpoena to request only the following items:

> 1) Please provide all documents that reflect the following for the on-line test taken by Anthony Musso:
> a. questions asked,
> b. Charging Party's answers,
> c. Charging Party's score, and
> d. What DDI considers as a passing score that would qualify the test-taker for continuation in the hiring process.
>
> 2) Please provide all documents that contain the following for all successful test-takers in Daimler Chrysler's hiring process for the position of

---

[1] More specifically, the Subpoena stated:
1) Please provide all documents that reflect the following for the on-line test taken by Anthony Musso:
> a. questions asked,
> b. Charging Party's answers,
> c. Charging Party's score, and
> d. What DDI considers as a passing score that would qualify the test-taker for continuation in the hiring process.
2) Please provide all documents that reflect the following for all successful test-takers in Daimler Chrysler's hiring process for the position of Manager during the period of January 1, 2005 to May 1, 2007: a. name, b. test answers, and c. test score.

Maintenance Supervisor at the Belvedere Assembly Plant during the period of January 1, 2005 to September 1, 2005: a. name, b. test answers, and c. test score.

9.    In that Determination, EEOC also stipulated that:

(a) Subpoena CH-07-375 does not seek validity studies in regard to the test;

(b) EEOC will not disclose the documents subpoenaed, or information contained therein, to the Charging Party or his agents.

10. On October 1, 2007, counsel for DDI sent to the EEOC a letter (Exhibit 5) stating that "if EEOC wishes to review testing materials, we will need to execute a confidentiality agreement to protect the security of the testing material and the information contained therein."

11. DDI's October 1, 2007 letter enclosed a proposed Confidentiality Agreement. (Exhibit 6.) It provides that DDI would produce only those documents that are "non privileged," and then only those that are "properly responsive to the subpoena as modified by the Determination." (Page 1, third paragraph.) It does not explain what types of documents it considers "privileged" and thus will not be produced. Nor does it explain which documents it considers as "responsive" but not "properly responsive."

12. The Confidentiality Agreement requires that EEOC agree (before DDI produces any documents) to return the documents within 10 days of receipt thereof, and that any notes thereon be returned within 10 days of EEOC's issuance of a Right to Sue Letter. (Paragraph B, page 2 of Exhibit 6).

13.    The ten-day limits are too short because EEOC investigators in the Chicago Office have large case loads. EEOC records show that the EEOC investigator assigned to this case has 138 pending cases. Investigators in her unit average 155 pending cases.

13.    To date, Respondent has failed to produce the documents requested by Subpoena No. CH-07-375 as modified by EEOC's Determination thereon.

I declare under penalty of perjury that the above statements are true and correct.

John P. Rowe
Chicago District Director
Equal Employment Opportunity Commission

Executed on November _5_, 2007

# EXHIBITS TO DECLARATION OF JOHN P. ROWE

1. Charge of Discrimination
2. Notice of Charge of Discrimination
3. Subpoena Number CH-07-375 to DDI
4. EEOC Determination on DDI Petition to Revoke or Modify Subpoena
5. DDI letter to EEOC, October 1, 2007
6. DDI Proposed Confidentiality Agreement, October 1, 2007

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 210-2005-09574 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)*  **Mr. Anthony V. Musso** | Home Phone No. *(Incl Area Code)*  **(815) 877-2029** | Date of Birth  **1-26-50** |
|---|---|---|

Street Address **6501 Shaddybrook Trail, Machesney Park, IL 61115**  City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name  **DAIMLER CHRYSLER CORPORATION** | No. Employees, Members  **500 or More** | Phone No. *(Include Area Code)*  **(815) 547-2604** |
|---|---|---|

Street Address **3000 W Chrysler Dr, Belvidere, IL 61008**  City, State and ZIP Code

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

Street Address  City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-02-2005**  Latest **09-16-2005**
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I. I have taught classes about small engine repairs at the Responsent for the last seventeen years through a company called Idea Consultants. In May, 2005 I applied to the Respondent's Human Resources Department for a full-time position. I was told that I could not be hired as an hourly employee because the company had contractual obligations to recall laid off employees first. I was told that I could apply for a salaried position. That day I was E-mailed a test to take to complete within 72 hours. I finished it and E-mailed it it back the same day. Sometime in June, or July 2005 I was told that I hadn't done so well on the test. To this date I have not been hired.**

**II. I believe that I have been discriminated against by the Respondent because of my disability in violation of the Americans With Disabilities Act 0f 1990.**

RECEIVED

OCT - 4 2005

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| ✗ 9/30/05  *Anthony V. Musso*  Date  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  *(month, day, year)* |

— Ex. 1

EEOC FORM 131 (5/01)

# U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **Lisa Wicker**<br>**Senior Manager Diversity**<br>**CIMS 485-08-10**<br>**1000 Chrysler Drive**<br>**Auburn Hills, Michigan 48326-2766** | **Anthony V. Musso** |

THIS PERSON (*check one or both*)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.

**210-2005-09574**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[ ] Title VII of the Civil Rights Act          [X] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act     [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **23-NOV-05** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to

   If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Charles R. Bold,**<br>**Investigator** | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |
|---|---|
| *EEOC Representative* | |
| *Telephone:* **(312) 353-7522** | |

Enclosure(s): [X] Copy of Charge

---

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [X] DISABILITY   [ ] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

Ex. 2 –

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Oct 17, 2005 | **John P. Rowe,**<br>**District Director** | *John P. Rowe (B)* |

EEOC Form 136
(Test 10/94)

# UNITED STATES OF AMERICA

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

---

# SUBPOENA

TO:     William C. Byham, Ph.D., Chairman and Chief Executive Officer          NO.      CH-07-375

Development Dimensions International

1225 Washington Pike

Bridgeville, PA 15017

IN THE MATTER OF:         Anthony Musso v. Daimler Chrysler

Charge No.      210-2005-09574

YOU ARE HEREBY REQUIRED AND DIRECTED TO:

☐  Testify before:          ☐  Produce and bring *   or  ☒  Mail * the documents described below to:

☐  Produce access to the evidence described below for the purpose of examination or copying to:

Nanisa Pereles, Investigator                                        of the Equal Employment Opportunity Commission

at     500 West Madison Street, Suite 2800, Chicago, IL 60661       on     June 26, 2007       at      8 :00am

The evidence required is

all documents (see definition attached hereto as Exhibit A) which state, describe, constitute, refer to, or relate in any way to the following (see Exhibit B hereto):

cc: Scott Erker, Ph.D.
Development Dimensions International
1225 Washington Pike
Bridgeville, PA 15017

This subpoena is issued pursuant to     ☐  (Title VII) 42 U.S.C. 2000e-9       ☐  (ADEA) 29 U.S.C. 626(a)       ☐  (EPA) 29 U.S.C.209

☒  (ADA) 42 U.S.C. 12117(e)

ISSUING OFFICIAL (Typed name, title and address)          ON BEHALF OF THE COMMISSION

John P. Rowe, District Director
500 W. Madison St., Suite 2800
Chicago, IL 60661

*John P. Rowe* (signature)     6/8/2007
                                Date

Ex. 3

# EXHIBIT A

"Documents" shall mean and include all written, printed, typed or graphic material, or other tangible mediums of reproduction or communication, of every kind and description, however, produced or reproduced, including, but not limited to: correspondent, statements, memoranda, films, microfilms, microfiche, pictures, videotapes, recordings of any type, transcripts, notes, photographs, slides, drawings, sketches, diagrams, graphs, charts, forms, letters, lists, reports, medical reports, studies, working papers, financial statements, bills, checks, vouchers, telegrams, abstracts, news releases, periodicals, bulletins, circulars, diaries, calendars, desk calendars, rules, regulations, codes, contracts agreements, notebooks, files, records, books, manuals, machine-readable documents from which any of the foregoing documents are or may be produced, documents which contain, include and/or explain any and all codes appearing on said machine-readable documents or materials similar to any of the foregoing, however denominated, by whomever prepared, to whomever addressed, which are in the possession, custody or control of the person or entity to which this Subpoena(s) is directed or to which such person or entity has, has had, or can obtain access. Further the term "documents" includes any copies of documents which are not identical duplicates of the originals, including but not limited to, all drafts of whatever date, copies with typed or handwritten notations, and copies of documents the originals of which are not in the possession, custody, or control of the person or entity to which the Subpoena is directed.

# Exhibit B

**Anthony Musso v. Daimler Chrysler**
**EEOC Charge Number 210-2005-09574**

1. Please provide all documents that reflect the following for the on-line test taken by Anthony Musso:

   a. questions asked,
   b. Charging Party's answers,
   c. Charging Party's score, and
   d. What DDI considers as a passing score that would qualify the test-taker for continuation in the hiring process.

2. Please provide all documents that reflect the following for all successful test-takers in Daimler Chrysler's hiring process for the position of Manager during the period of January 1, 2005 to May 1, 2007:

   a. name,
   b. test answers, and
   c. test score.

# UNITED STATES OF AMERICA
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

IN THE MATTER OF:

| | | |
|---|---|---|
| Anthony Musso, | ) | |
|         Charging Party, | ) | SUBPOENA NO. CH-07-375 |
| | ) | |
|     v. | ) | |
| | ) | |
| DAIMLER CHRYSLER CORPORATION, | ) | |
| | ) | |
| | ) | CHARGE NO. 210-2005-9574 |
| | ) | |
|         Respondent. | ) | |

PETITIONER:

Development Dimensions International, Inc.

BY:    Lawrence Ashe
        Ashe & Rafuse
        1355 Peachtree Street, N.E., Suite 500
        Atlanta, Georgia 30309-3232

## DETERMINATION ON PETITION TO REVOKE OR MODIFY SUBPOENA

The United States Equal Employment Opportunity Commission, ("EEOC" or "Commission") pursuant to 29 C.F.R. §1601.16(a), Procedural Regulations of the Commission, and in accordance with Section 24.12 of the Compliance Manual, hereby issues this Determination on the Petition of Development Dimensions International ("DDI") to Revoke or Modify Subpoena CH-07-375. (The Petition, together with its exhibits, is attached as Exhibit 1.) For the reasons set forth below, DDI's Petition to Revoke is denied. The subpoena is modified as indicated below.

### I. BACKGROUND

#### A. Charge and Investigation

On October 4, 2005, Anthony Musso filed a Charge of Discrimination with the EEOC, No. 210-2005-9574, against Daimler Chrysler Corporation ("Chrysler"). (Exhibit F to DDI Petition

Ex. 4

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

IN THE MATTER OF:

| | | |
|---|---|---|
| Anthony Musso, | ) | |
| Charging Party, | ) | SUBPOENA NO. CH-07-375 |
| | ) | |
| v. | ) | |
| | ) | |
| DAIMLER CHRYSLER CORPORATION, | ) | |
| | ) | CHARGE NO. 210-2005-9574 |
| | ) | |
| Respondent. | ) | |

PETITIONER:

Development Dimensions International, Inc.

BY:    Lawrence Ashe
       Ashe & Rafuse
       1355 Peachtree Street, N.E., Suite 500
       Atlanta, Georgia 30309-3232

## DETERMINATION ON PETITION TO REVOKE OR MODIFY SUBPOENA

The United States Equal Employment Opportunity Commission, ("EEOC" or "Commission") pursuant to 29 C.F.R. §1601.16(a), Procedural Regulations of the Commission, and in accordance with Section 24.12 of the Compliance Manual, hereby issues this Determination on the Petition of Development Dimensions International ("DDI") to Revoke or Modify Subpoena CH-07-375. (The Petition, together with its exhibits, is attached as Exhibit 1.) For the reasons set forth below, DDI's Petition to Revoke is denied. The subpoena is modified as indicated below.

### I. BACKGROUND

#### A. Charge and Investigation

On October 4, 2005, Anthony Musso filed a Charge of Discrimination with the EEOC, No. 210-2005-9574, against Daimler Chrysler Corporation ("Chrysler"). (Exhibit F to DDI Petition

to Revoke or Modify.) [1] Mr. Musso alleged that around May 2005 he spoke with Chrysler Human Resources and was told he could apply for a salaried position with the company by completing an on-line test that would be sent to him via E-mail. Mr. Musso further alleged that he completed this test, was not hired by Chrysler, and that Chrysler discriminated against him because of his disability in violation of the Americans With Disabilities Act of 1990 ("ADA").

October 17, 2005, the Commission sent a Notice of Charge to Chrysler. (Exhibit 2.)

Mr. Musso had sent a letter to Chrysler Human Resources on August 26, 2005 describing his interactions with the Chrysler Human Resources Department. (Exhibit 3.) In this letter, Mr. Musso explained that due to his Polio he has no use of his legs, is confined to a wheelchair and has paralysis in his left arm. Despite his physical disability, working as an employee of Idea Consultants, Inc., Mr. Musso successfully taught small electronics and small engine repair classes at the Belvidere Chrysler Plant for 17 years. (Exhibit 3.)

Around May 2005, Mr. Musso was interested in applying for a job directly with Chrysler and called Rick McPherson at Chrysler Human Resources. Mr. Musso stated that he wanted to apply for a job and per McPherson's instructions sent his resume to Kim Kuborn at Chrysler's Human Resources Department to apply for a full-time position. Kuborn told Mr. Musso that he could not be hired as an hourly employee because Chrysler had contractual obligations to recall laid off employees before hiring any others. (Exhibit 3.)

As an alternative to an hourly position, Kuborn told Mr. Musso he could apply for a salaried position. In order to apply, Mr. Musso was first required to take an on-line exam that would assess his leadership skills. Chrysler e-mailed Mr. Musso the screening test, which he completed and submitted from his personal computer at home. On or around June or July 2005, Mr. Musso called Chrysler and was told that he did not pass the test and therefore could not be considered for a salaried position. When Mr. Musso asked for his test results McPherson refused to release any test score or test information. Mr. Musso also asked if he could take the test again but McPherson said no. (Exhibit 3.)

On November 21, 2005, Chrysler submitted a Position Statement regarding Mr. Musso's discrimination charge. (Petitioner Exhibit B.) Chrysler asserted therein that it found no evidence

---

[1] When we refer to a document that is attached as an exhibit to DDI's Petition to Revoke or Modify the Subpoena, we refer to it as an Exhibit thereto. Those are identified by letters of the alphabet. When we refer to another document, we refer to it as an Exhibit 1 or Exhibit 2, etc.)

that Mr. Musso was discriminated against because of his disability. Chrysler stated Mr. Musso did not receive a satisfactory test score required to be considered as a candidate for a management position within Chrysler.[2] Further, Chrysler stated that Mr. Musso was not given a copy of the test he took and was not given an opportunity to re-test because Chrysler does not share test scores with any of its applicants and does not allow applicants to re-test.

On March 1, 2006, EEOC sent a Request for Information ("RFI") to Chrysler regarding Mr. Musso's charge. (Exhibit 4.) On March 13, 2006, Chrysler sent a letter responding to this request. (Petitioner Exhibit C.) In response to EEOC's request for a copy of the job description salaried position that Mr. Musso applied for in May 2005. Chrysler replied that Mr. Musso did not post for the position he was seeking but rather had his resume faxed to Chrysler's Talent Acquisition Department.

In the March 1 RFI, EEOC also requested a copy of Mr. Musso's test scores showing that he did not pass the test, but Chrysler also failed to respond to this request, stating instead that Mr. Musso's did not pass the test and should not be considered for immediate employment by Chrysler. Chrysler further stated that the test materials EEOC requested are maintained under secure conditions and DDI would only make these documents available for proctored inspection by qualified reviewers at Chrysler corporate facilities or at a location to be agreed upon. Chrysler also gave this same response to EEOC's request for a copy of the test. (Petitioner Exhibit C.)

In its March 13, 2006 response to the RFI Chrysler also stated that it uses the screening test as a selection measure for leadership positions and that the test is designed to assess a candidate's judgment related to leadership and supervisory work settings, problem-solving ability, dispositional stability and prior experience. Chrysler further stated that the test is deployed on a secure website to candidates who are referred to the testing phase of the selection process. In response to EEOC's request to identify the name and job title the person who informed Mr. Musso that he did not do well on his test, Chrysler stated that Mr. Musso was sent

---

[2] Charging Party and Respondent Employer offer conflicting information about the position for which Charging Party was actually applying. While Chrysler asserts that it was considering Mr. Musso for a Maintenance Supervisor position, Mr. Musso asserts that he was instructed he could apply for a "salaried position" and does not specifically state he knew he was applying for a Maintenance Manager position.

3

an automated letter informing him that he was not being considered for the employment position. (Petitioner Exhibit C.)

Chrysler's March 13, 2006 letter also included a partial response to EEOC's request for the name, date of hire, and job title for all the employees who were selected for positions that Mr. Musso applied for during the period January 1, 2005 to December 31, 2005, and to specify whether any of these employees are disabled. Chrysler stated that Mr. Musso did not apply for any position with Chrysler during that time period, but Mr. Musso was considered for employment with Chrysler because he dropped off his resume at the Belvidere Assembly Plant. Chrysler also stated that Mr. Musso was considered for a Maintenance Supervisor position that was filled by Bolivar Lopez, who has a Bachelors Degree in Electrical Engineering Technology and had previous Maintenance Supervisory experience. Chrysler did not state whether Mr. Lopez was disabled. (Petitioner Exhibit C.)

On April 6, 2006, Chrysler sent responses to EEOC's second request for information regarding Mr. Musso's charge of discrimination. (Petitioner Exhibit D.I.) In response to EEOC's request for a copy of the test sent to Mr. Musso and the guidelines for scoring it, Chrysler said that it would make the documents available for proctored inspection by qualified reviewers at its corporate facility or at a location to mutually agreed upon. In response to EEOC's request for the successful applicant's application and test scores, Chrysler responded that this information had no relevance because Mr. Musso was not given further employment consideration with Chrysler. (Petitioner Exhibit D.)

On August 10, 2006, Chrysler sent notice to EEOC via facsimile suggesting an on-site review of the test because DDI was not wiling to allow any tests or answers to leave its possession. (Petitioner Exhibit E.)

At page 2 of its Petition, DDI asserts that for over a year Chrysler and DDI have agreed to make some documents available but only for "proctored inspection" by "qualified reviewers" at one of Chrysler's facilities.[3]

---

[3] DDI does not assert that EEOC ever made such an agreement. Nor does it define what it means by "proctored inspection" or "qualified reviewers."

**B. Subpoena**

On June 8, 2007, EEOC issued to DDI Subpoena Number Ch-07-375 (See DDI Petition, Exhibit A.)  The subpoena was issued by John P. Rowe, Chicago District Director of the EEOC, is dated Friday, June 8, 2007, and was received by DDI via certified mail on Monday, June 11, 2007. The subpoena requests DDI's production of documents at the Chicago EEOC office.  It states:

 (1) Please provide all documents that reflect the following for the on-line test taken by Anthony Musso:

  a. questions asked,
  b. Charging Party's answers,
  c. Charging Party's score, and
  d. What DDI considers as a passing score that would qualify the test-taker for continuation in the hiring process.

 (2) Please provide all documents that reflect the following for all successful test-takers in Daimler Chrysler's hiring process for the position of Manager during the period of January 1, 2005 to May 1, 2007:

  a. name,
  b. test answers, and
  c. test score.

DDI served the Commission its Petition to Revoke or Modify the Subpoena on June 22, 2007.

## II. ANALYSIS

EEOC Subpoenas issued under the ADA are issued pursuant to the EEOC's Title VII investigatory power because the ADA adopts the relevant sections of Title VII. [4]

---

[4] Section 107 of the ADA incorporates the "powers, remedies and procedures" of sections 705, 706, 707, 709 and 710 of Title VII of the Civil Rights Act of 1964.  Section 710 of Title VII in turn provides in regard to EEOC investigations that Section 11 of the National Labor Relations Act ("NLRA"), 29 U.S.C. Section 161, shall apply. Section 11(2) of the NLRA, 29 U.S.C. Section 161(2), provides, "In case of contumacy or refusal to obey a subpoena issued to any person, any District Court of the United States...upon application by the Board, shall have jurisdiction to issue to such person an order requiring such person to appear before the Board...there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question."

The Commission's subpoena power is broad, entitling it "access to virtually any material that might cast light on the allegations against [an] employer." EEOC v. Shell Oil Co., 466 U.S. 54, 68-69, 104 S.Ct. 1621, 1631 (1984). Under Title VII, the EEOC has the right to examine and copy "any evidence … relevant to the charge under investigation." EEOC v. Quad/Graphics, Inc., 63 F.3d 642 (7th Cir 1995) (quoting 42 U.S.C. § 2000e-8(a)). Subpoenaed material is relevant if it "'touches on a matter under investigation.'" EEOC v. Deb Shops, Inc., 1995 WL 579541 (N.D. Ill.) (quoting EEOC v. A.E. Staley Mfg. Co., 711 F.2d 780, 783 (7th Cir. 1983)). Moreover, the "relevance requirement does not limit the EEOC to the evidence concerning the specific charge. An EEOC subpoena may also seek evidence concerning employment practices other than those specifically charged by complainants." EEOC v. Deb Shops, Inc., *supra.* at * 12. Courts uniformly uphold the relevancy of EEOC subpoenas seeking information about discrimination not specifically alleged in the charge. EEOC v. Lakeside Building Maintenance, Inc., 255 F.Supp.2d 871 (N.D. Ill. 2003) (quoting EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 311 n. 8 (7th Cir. 1981)).

The EEOC's administrative investigation in this case seeks to determine if Chrysler refused to consider Mr. Musso for a managerial position because he has polio even though his test score was comparable to that of persons who passed the test. It seeks Mr. Musso's completed test and score, and the completed test and scores of other persons who applied for managerial positions and successfully completed the test.

### A.    Objections in Regard to Absence of Confidentiality Agreement

On pages 3 and 4 of its Petition, DDI asserts all information related to the Leadership Test is it commercially-valuable  trade secret property, and that Chrysler, like other DDI clients, is required to follow and maintain strict test security procedures that prohibit releasing any information related to the test without DDI's consent. DDI also asserts that these rigorous test security measures are mandated by the *Uniform Guidelines on Employee Selection Procedures* found at 29 C.F.R. § 1607. However, DDI fails to specify where the Uniform Guidelines require such test security measures. In fact, the Uniform Guidelines provide only standards regarding conducting validity studies of employee selection procedures. They do not shield a test which an employer uses as a selection procedure from EEOC review during an investigation of discrimination.

DDI argues that the EEOC subpoena requests "production of highly valuable commercial information without an appropriate confidential agreement providing necessary safeguards." (Page 6 of Petition.) This is the heart of DDI's argument. On page 9 of its petition, DDI asks that the subpoena be revoked or modified to "require compliance only upon execution of the discussed confidentiality agreement." But DDI has not submitted a draft confidentiality agreement to the EEOC for its review. EEOC will not agree to a confidentiality agreement sight unseen.

Title VII of the Civil Rights Act of 1964 imposes criminal penalties upon EEOC personnel who disclose to the public information obtained in the course of investigating charges of employment discrimination. § 709(e) of Title VII, 42 U.S.C. § 2000e-8(e). That section provides that any officer or employee of the Commission who makes public in any manner such information prior to the filing of an enforcement lawsuit shall be guilty of a crime and, upon conviction, subject to a fine of not more than $1,000.00, or imprisoned not more than one year. See also 29 C.F.R. § 1601.22. Because of these severe criminal penalties, DDI needs no further assurance that the material it produces to the EEOC will be kept confidential. [5]

In EEOC v. University of Pennsylvania, 493 U.S. 182 (1990), the Supreme Court rejected the type of confidentiality argument DDI asserts here. In that case the University had argued that the Court could require a showing of more than relevance as a condition of obtaining confidential peer review materials used in tenure decisions. In rejecting that argument, the Court noted that Congress had already addressed "situations in which an employer may have an interest in the confidentiality of its records." 493 U.S. at 192. Accord, EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 312 (7th Cir. 1981) (confidentiality is no excuse for noncompliance with an EEOC subpoena, citing 42 U.S.C. §§ 2000e-5(b), 2000e-8(e)). See also EEOC v. Illinois Department of Employment Security, 995 F.2d 106 (7th Cir. 1995) (state statute making unemployment compensation proceedings confidential did not preclude enforcement of EEOC's subpoena seeking copy of transcript of state unemployment proceeding).

In EEOC v. City of Milwaukee, 54 F. Supp. 2d 885 (E.D. WI 1999), EEOC obtained enforcement of subpoenas requesting test scores. The City asked for a protective order to prevent

---

[5] Fed. R. Civ. P. 45 (c)(3)(B)(ii) provides that federal courts may require protective orders when enforcing subpoenas in court proceedings calling for disclosure of "a trade secret or other confidential research, development, or commercial information"). By comparison, Title VII does not authorize such a protective order.

the charging parties from seeing the requested documents, just as DDI does here. Id. at 891. The court declined to enter such an order, explaining that Congress considered the issue of confidentiality and provided adequate protection in section 709 of Title VII and allowed a charging party to have access to the information obtained by the EEOC during the investigation of his or her own case. Id. at 893.  EEOC v. County of Hennepin, 623 F. Supp. 29, 33 (D. Minn. 1985), holds that a respondent must produce confidential personnel files and was not entitled to a protective order prohibiting public disclosure.

Section 709(e) of Title VII, which prohibits the EEOC from disclosing to the public information obtained in an investigation, does not prohibit disclosure to a party. *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 598, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981).  As a result, courts have refused to enter protective orders that would bar EEOC's disclosure of such information to a party.  For instance, in EEOC v. Morgan Stanley, 132 F. Supp. 2d 146 (S.D.N.Y. 2000), the Court refused to enter a protective order. In that race and sex discrimination case, EEOC's subpoena sought various personnel records. Morgan opposed the subpoena arguing that §709(e) of Title VII did not adequately protect its privacy concerns. The court did not agree with Morgan, and noted that the threat of disclosure under FOIA was too remote to require a protective order, and that §709 permitted the EEOC to disseminate the information to the charging party and her attorney. Id. at 155. [6] Moreover, EEOC Compliance Manual § 83.3. requires charging parties to sign nondisclosure agreements before they gain access to information that the EEOC has obtained in an investigation. That provision also protects any claimed privacy interest.

DDI cites EEOC v. Laborers Local 75, 1982 WL 469 (N.D. Ill. 1982), in support of its argument that a confidentiality agreement is appropriate when an EEOC subpoena calls for production of testing information. DDI's Petition summarizes this case as "holding that it is appropriate to require execution of a protective order when an EEOC subpoena calls for production of confidential documents." (Petition Page 7). But DDI misstates the holding. The court in Laborers Local in fact ordered respondent to fully comply with an EEOC subpoena and stated that the court would *entertain* a motion for a protective order because the court *may* utilize

---

[6]  There are cases decided to the contrary, but EEOC disagrees with them. See,  EEOC v. Aon Consulting, Inc., 149 F. Supp. 2d 601 (S.D. Ind. 2001) and EEOC v. C & P Telephone Co., 813 F. Supp. 878 (D.D.C. 1993).



a protective order to assure confidentiality. The court in Laborers Local also found that respondents did not identify any recognized privilege which protected the information requested in the subpoena and recognized that "the Seventh Circuit has recently held that 'confidentiality is no excuse for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination.'" Id. at *1 (quoting EEOC v. Bay Shipbuilding Corporation, 668 F.2d 304, 312 (7th Cir. 1981)).

### B. Objection based on Harassment

In Section III. A. of its Petition DDI also asserts that EEOC has issued Subpoena Number CH-07-375 for purpose of harassing DDI. Because that assertion is made without any factual basis, EEOC denies that objection.

DDI erroneously implies that EEOC lacks power to subpoena information from entities that are not the Respondent of the particular Charge of Discrimination. In support of this claim, DDI cites EEOC v. Bellemar Parts Industries, Inc., 868 F.2d 199 (6th Cir. 1989), and summarizes the case as "holding that the EEOC did not have authority to enforce a subpoena against an entity that was not the subject of a valid charge."[7] A more thorough review of the law reveals, however, there is no question that EEOC may exercise its subpoena power over third parties other than the respondent employer named in the charge. See EEOC v. Ill. Dep't of Employment Sec., 995 F.2d 106, 107 (7th Cir. 1993) (stating that it is immaterial that a subpoena was to be enforced against third party.)

### C. Objection based on Burdensomeness

DDI asserts the subpoena unduly burdens DDI by requesting production of highly valuable commercial information without an appropriate confidentiality agreement. (Section III. A. of DDI Petition.) DDI claims that if information about the test is released to just one person

---

[7] *EEOC v. Bellemar Parts Industries, Inc,* involved an EEOC charge against Honda of America Manufacturing, Inc. (including Bellemar Industries, Inc.) for racial and sexual discrimination and for failure to file EEO-1 reports. Though the EEOC was advised that Honda of America did not include Bellemar, as they were two separate corporations, EEOC included Bellemar on the subpoena. Because EEOC included Bellemar on the charge, the court concluded that the action filed by the EEOC to enforce its subpoena in district court was groundless. Id at 200. Thus, it is incorrect for DDI to state that based on this case there is some question as to whether the EEOC may exercise its subpoena power over any party other than the respondent employer named in the charge.

its value could be destroyed and DDI and its clients could suffer significant economic loss. But DDI has presented no affidavit or other evidence which supports this broad assertion of economic loss. By failing to do so, DDI has not met its burden of demonstrating that responding to the subpoena would "threaten the normal operation of a respondent's business." EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981). In determining whether compliance is overly burdensome, a court need not accept Respondent's estimate of time and cost to comply. EEOC v. Quad/Graphics, Inc., 63 F.3d 642, 648-49 (7th Cir. 1995). Therefore, EEOC rejects DDI's objection that the subpoena is unduly burdensome.

### D. Objections that the Subpoena is Vague, Incomplete and Confusing

In Section III. B. of the Petition, DDI asserts that EEOC's definition of "documents" in the Subpoena is vague and overbroad. To the extent that DDI objects to the word "reflect" in the phrase "documents that reflect" the information specified, EEOC herein defines "reflect" to mean "contain."

More particularly DDI asserts that:

1) the Subpoena calls for production of privileged communications;

2) the Subpoena's request for information on the test scores of persons who sought to become "managers," includes positions for which the Charging Party did not apply; and

3) producing test scores of other test takers would invade their privacy, and disclose private and proprietary commercial information.

### 1) Response in regard to "privileged communications"

It is unclear what "privileged communications" DDI refers to other than the test answers and scores and "documents related to the "Leadership Test validity." (See p. 8 of Petition.) If DDI believes that the subpoena covers other privileged documents, it has waived that objection by not specifying them. Finally, as shown above, whatever "privileged communications" DDI refers to are protected against public disclosure by Title's VII's criminal penalties for such disclosure. The EEOC, however, stipulates that Subpoena CH-07-375 does not seek validity studies in regard to the test.

### 2) Response in regard to meaning of "Manager"

DDI argues that because EEOC has not defined "Manager," the term is overbroad because it includes positions for which Mr. Musso did not apply. (Petition, page. 8.) Considering the facts in this case, EEOC modifies Exhibit B, Paragraph 2 of the subpoena to read: "Please

provide all documents that contain the following for all successful test-takers in Daimler Chrysler's hiring process for the position of Maintenance Supervisor at the Belvedere Assembly Plant during the period of January 1, 2005 to September 1, 2005: a. name, b. test answers, and c. test score."

### 3) Response in regard to privacy interest of test takers, and private business and commercial information

If DDI believes that the subpoena covers privileged documents, it has waived that objection by not specifying them. Further, confidentiality is no excuse for noncompliance with an EEOC subpoena because Title VII protects the confidentiality of material disclosed to EEOC during an investigation. See Section II.A, supra.

Moreover, access to such confidential material allows EEOC to appropriately evaluate the Charge of Discrimination in this case. Without access to similarly situated employees' test scores, EEOC is not able to determine whether there is evidence of discrimination.

## III. DETERMINATION

THEREFORE, for the reasons stated above, Respondent's Petition to Revoke Subpoena No. CH -07-375 is denied. The law and the facts show that the Commission's issuance of the subpoena complies with Title VII and is within the scope of the Commission's authority to investigate the instant charges.

Respondent's Petition to Modify is granted to the following extent:

a) The subpoena is amended at Exhibit B, Paragraph 2 to state: "Please provide all documents that contain the following for all successful test-takers in Daimler Chrysler's hiring process for the position of Maintenance Supervisor at the Belvedere Assembly Plant during the period of January 1, 2005 to September 1, 2005: a. name, b. test answers, and c. test score."

b) The documents requested in the subpoena must be produced on or before 5:00 p.m. on 8/31/ 2007 to EEOC Investigator Nanisa Pereles, U.S. Equal Employment Opportunity Commission Chicago District Office, 500 West Madison Street, Suite 2800, Chicago, IL 60661.



In addition, the EEOC hereby stipulates and agrees that it will not disclose the documents subpoenaed, or information contained therein, to the Charging Party or his agents.

On behalf of the Commission,

*Stephen Llewellyn*                                    8/10/07

Stephen Llewellyn                                     Date
Acting Executive Officer
Executive Secretariat
Equal Employment Opportunity Commission
1801 "L" Street, N.W.
Washington, D.C. 20507


## Determination Exhibits

Exhibit 1:    DDI's Petition to Revoke or Modify the Subpoena, together with the
              Exhibits thereto (A - H).
Exhibit 2:    EEOC Notice of Charge sent to Chrysler
Exhibit 3:    Charging Party Musso's August 26, 2005 letter to Chrysler Human Resources
Exhibit 4:    March 1, 2006 EEOC RFI to Chrysler


## Exhibits to DDI Petition referred to in Determination

The Determination also refers to but does not copy again the following exhibits to DDI's Petition to Revoke or Modify the Subpoena


Petitioner Exhibit A:  Subpoena
Petitioner Exhibit B:  Chrysler's Nov. 21, 2005 Position Statement in response to
                       Charge
Petitioner Exhibit C:  Chrysler's March 13, 2006 response to EEOC March 1, 2006 RFI
Petitioner Exhibit D:  Chrysler's April 6, 2006 response to EEOC's Second RFI
Petitioner Exhibit E:  Chrysler's Aug.10, 2006 Fax to EEOC
Petitioner Exhibit F:  Musso's Charge of Discrimination, October 4, 2005



# Ashe Rafuse &Hill LLP

lawrenceashe@asherafuse.com
Writer's Direct Dial: 404-253-6001

RECEIVED EEOC

OCT - 9 2007

October 1, 2007

**Via First-Class Mail**

John P. Rowe
District Director
Equal Employment Opportunity Commission
500 W. Madison St., Suite 2800
Chicago, IL 60661

Re:    <u>Anthony Musso v. Daimler Chrysler Corporation</u>,
         EEOC Charge No. 210-2005-9574

Dear Mr. Rowe,

This Firm represents Development Dimensions International, Inc. ("DDI"), a non-party that created the Leadership Career Battery test that Daimler Chrysler has used as a selection measure for leadership positions.

In the above-referenced matter, the EEOC requested documents regarding the test Charging Party, Anthony Musso, took in connection with his attempt to obtain a management position with Daimler Chrysler. In response, DDI offered to make the documents available for proctored inspection by qualified reviewers and to provide information regarding the nature of the test, its administration, and scoring under mutually agreed conditions that would not risk the long-term security of the confidential, proprietary test material.

However, the EEOC would not agree to conditions that would protect the test security and confidentiality of the materials and information DDI would provide. Instead, on June 8, 2007, the EEOC subpoenaed certain documents regarding the test Mr. Musso took, including test questions, test scores, scoring process, and information relating to those individuals who received "passing scores" on the test.[1]

---

[1] Please find a copy of the originally issued subpoena attached to this letter as Attachment 1.

- Ex. 5



Ashe
Rafuse
&Hill LLP

Mr. John P. Rowe
October 1, 2007
Page 2

DDI petitioned to revoke or modify the subpoena. The Determination on DDI's petition denied the petition and asked that documents be produced by August 31, 2007.[2] However, because of the confidential nature of the documents and the fact that there currently is nothing protecting the dissemination of the documents to non-parties through FOIA requests, DDI has not produced any documents pursuant to the subpoena.

The requested documents contain highly confidential and proprietary information, and consistent with both the American Psychological Association's *Standards for Educational and Psychological Testing* ("APA *Standards*") and the Society for Industrial and Organizational Psychology's *Principles for the Validation and Use of Personnel Selection Procedures* ("SIOP *Principles*"), the requested documents are maintained under secure conditions.[3] As stated in the *Principles for the Validation and Use of Personnel Selection Procedures,* "public disclosure of the content and scoring of most selection procedures should be recognized as a potentially serious threat to their reliability, validity, and subsequent use."[4] Even the EEOC's own website posts a statement by Kenneth M. Willner made at the May 16, 2007 Commission meeting regarding Employment Testing and Screening. Mr. Willner stated:

> In receiving and reviewing testing-related materials, investigators also should be trained to acknowledge their inherently confidential and proprietary nature… Additionally, investigators should be trained to cooperate in the negotiation of appropriate confidentiality agreements and procedures for the review of job analysis and validation materials that often contain highly confidential and proprietary employer information.

http://www.eeoc.gov/abouteeoc/meetings/5-16-07/willner.html.

---

[2] The August 10, 2007 Determination on Petition to Revoke or Modify Subpoena did modify the June 8, 2007 subpoena by amending Exhibit B, Paragraph 2 to state: "Please provide all documents that contain the following for all successful test-takers in Daimler Chrysler's hiring process for the position of Maintenance Supervisor at the Belvedere Assembly Plant during the period of January 1, 2005: a. name, b. test answers, and c. test score." *See* EEOC Determination, p.11. In its Determination, the EEOC also agreed to "not disclose the documents subpoenaed, or the information contained therein, to the Charging Party or his agents." *See* EEOC Determination, p.12.

[3] The APA *Standards* are incorporated by express reference in the *Uniform Guidelines on Employee Selection Procedures*, 29 CFR § 1607 *et seq.* ("*Uniform Guidelines*"). *See Uniform Guidelines* at § 1607.5(C). The SIOP *Principles* are universally recognized as of similar import.

[4] Society for Industrial and Organizational Psychology's *Principles for the Validation and Use of Personnel Selection Procedures* (4th ed. 2003), p. 44.



**Ashe
Rafuse
&Hill** LLP

Mr. John P. Rowe
October 1, 2007
Page 3

Our client is certainly willing to engage in discussions regarding the production of the documents requested by the subpoena, but if the EEOC wishes to review testing materials, we will need to execute a confidentiality agreement to protect the security of the testing material and the information contained therein. In the EEOC Determination on DDI's petition, the EEOC said it could not agree to a confidentiality agreement sight unseen (EEOC Determination, p. 7). A proposed confidentiality agreement is enclosed (Attachment 2).

We hope such an agreement may be reached that will protect the confidentiality of DDI's testing materials and allow DDI to voluntarily provide the EEOC with the information it believes it needs for its investigation.

Failing such cooperation and compliance with test security requirements mandated by, *inter alia*, the EEOC's own *Uniform Guidelines*, we will seek an appropriate protective order and related fees from the relevant U.S. District Court. We hope this won't be necessary.

Thank you for your attention to this matter.


With best wishes, I am

Sincerely yours,

R. Lawrence Ashe, Jr., Esq.
for Ashe, Rafuse & Hill LLP


cc:    Nanisa Pereles, EEOC Investigator

## CONFIDENTIALITY AGREEMENT

The Equal Employment Opportunity Commission (hereinafter "Commission" or "EEOC") has initiated an investigation into the allegations made by Anthony Musso against Daimler Chrysler Corporation in EEOC Charge No. 210-2005-9574.  As part of its investigation, on June 8, 2007, the Commission issued a subpoena upon third party Development Dimensions International, Inc. ("DDI") for the production of certain documents.  A copy of the June 8, 2007 subpoena is attached hereto as Exhibit "A."

DDI wishes to cooperate with the Commission.  However, the requested documents contain highly confidential and proprietary information, and consistent with both the American Psychological Association's *Standards for Educational and Psychological Testing* and the Society for Industrial and Organizational Psychology's *Principles for the Validation and Use of Personnel Selection Procedures,* the requested documents are maintained under secure conditions.  As stated in the *Principles for the Validation and Use of Personnel Selection Procedures*, "public disclosure of the content and scoring of most selection procedures should be recognized as a potentially serious threat to their reliability, validity, and subsequent use."[1] Therefore, in order to protect the confidential and proprietary information provided to the Commission by DDI, the Commission and DDI agree to the following Confidentiality Agreement.

In consideration for the Commission's execution of this Agreement, DDI states it will provide all non-privileged documents properly responsive to the June 8, 2007 subpoena (as modified by the August 10, 2007 EEOC's Determination on Petition to Revoke or Modify Subpoena ("EEOC Determination") in the matter of *Musso v. Daimler Chrysler,* Charge No. 210-2005-9574).[2]  The documents produced in response to the subpoena, all copies thereof, and any and all documents produced by DDI in connection with the EEOC's investigation into the allegations made by Anthony Musso against Daimler Chrysler Corporation in Charge No. 210-2005-9574 will be returned to DDI within ten (10) business days of the undersigned EEOC agent's receipt of said documents.  Any information or documents that reflect or refer to information obtained from the documents produced by DDI, including any notes or memoranda made by the EEOC, must be kept in the strictest confidence by the EEOC and must not be revealed to the Charging Party, his agents, or any third party (including via FOIA request).

---

[1] Society for Industrial and Organizational Psychology's *Principles for the Validation and Use of Personnel Selection Procedures* (4th ed. 2003), p. 44.

[2] The EEOC Determination modified the June 8, 2007 subpoena by amending Exhibit B, Paragraph 2 to state: "Please provide all documents that contain the following for all successful test-takers in Daimler Chrysler's hiring process for the position of Maintenance Supervisor at the Belvedere Assembly Plant during the period of January 1, 2005 to September 1, 2005: a. name, b. test answers, and c. test score."  *See* EEOC Determination, p.11.

EEOC                DDI
By: _____         By: _____          Page 1 of 3          Ex. 6

## A. DEFINITION OF CONFIDENTIAL MATERIAL

The term "Confidential Material" means any documents or information in any form produced by DDI or any information or documents that refer to or reflect information obtained from the documents or refer to or reflect information provided by DDI, including copies, notes or memoranda made by the EEOC during the Commission's investigation into the allegations made by Anthony Musso against Daimler Chrysler Corporation in EEOC Charge No. 210-2005-9574 and any subsequent or amended charge he may file.

## B. LIMITATIONS ON USE OF CONFIDENTIAL MATERIAL

Confidential Material shall be used solely for the purposes of the Commission's investigation of allegations made by Anthony Musso against Daimler Chrysler Corporation in Charge No. 210-2005-9574 and any subsequent or amended charge he may file. The Commission agrees that, during the Commission's investigation, Confidential Material may be disclosed only to Commission employees with a "need to know" and any other person mutually agreed upon in writing by DDI and the Commission. As stipulated and agreed to in the EEOC Determination, the Commission will not disclose the documents provided by DDI or the information contained therein to the Charging Party or his agents. *See* EEOC Determination, p.12. Moreover, all Confidential Material produced by DDI in response to the June 8, 2007 subpoena or in connection with the EEOC's investigation into the allegations made by Anthony Musso against Daimler Chrysler Corporation in Charge No. 210-2005-9574, will be returned to DDI within ten (10) business days of the undersigned EEOC agent's receipt of said documents. Furthermore, any Confidential Material not returned to DDI within ten (10) business days, *i.e.*, documents reflecting or referring to information obtained through viewing documents produced by DDI, including, but not limited to, any notes or memoranda made by the EEOC, must be destroyed within ten (10) business days of the issue date of the Notice of Right to Sue and so certified to DDI.

## C. RESERVATION OF RIGHTS

In the event that the Commission should file a complaint against DDI, Daimler Chrysler, or any other DDI client, DDI has not waived any objections it may assert to the discovery and/or the disclosure of Confidential Material in litigation or any right it may have to seek a protective order governing Confidential Material that has been previously disclosed to the Commission. Similarly, the Commission has not waived the right to seek discovery of such material under appropriate conditions.

## D. TREATMENT OF REQUESTS UNDER FOIA

If any party or third party seeks to obtain Confidential Material produced by DDI from the Commission under the Freedom of Information Act, the Commission will, pursuant to 29 C.F.R. Part 1610 and the Privacy Act of 1974, resist such attempted access by asserting all applicable exceptions and/or exemptions, including, but not limited to, that disclosure of such information would reveal trade secrets or confidential commercial information that is privileged and/or confidential. The Commission will further assert that all Confidential Material is exempt from disclosure due to pending official investigation so long as that applies pursuant to 29 C.F.R.

EEOC          DDI
By: _____   By:_____          Page 2 of 3

§ 1610.19. The Commission also agrees to notify DDI as soon as is practicable, but in no event more than five (5) business days after the FOIA request is received, if any third party seeks to obtain such Confidential Material from the Commission in accordance with 29 C.F.R. § 1610.19. The EEOC shall forward a copy of the FOIA request by facsimile transmission to DDI counsel, R. Lawrence Ashe, Jr. All predisclosure notification procedures outlined in 29 C.F.R. § 1610.19 will be followed, and the Commission shall fully and fairly consider all objections raised by DDI to disclosure and assert all applicable exemptions.

## E.    AUTHORITY

The official executing this Agreement on behalf of a party to it represents and warrants having the requisite authority to do so and bind his/her principal.

FOR THE UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

FOR DEVELOPMENT
DIMENSIONS
INTERNATIONAL, INC.

_____
[name, title, and address]

_____
[name, title, and address]

Dated: _____

Dated: _____